Phyllis Widman, Esquire (I.D.# 004861999)
**WIDMAN LAW FIRM, LLC**
2000 Shore Road, Suite 201
Linwood, New Jersey 08221
TEL: (609) 848-5692  FAX: (609) 788-4527
pwidman@widmanlawfirm.com
*Attorney for Plaintiff, Officer Christopher Leary*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER LEARY,<br><br>                     Plaintiff,<br><br>      v.<br><br>EGG HARBOR TOWNSHIP POLICE DEPARTMENT, THE TOWNSHIP OF EGG HARBOR, MAINLAND LOCAL PBA #77, NEW JERSEY STATE ASSOCIATION OF CHIEFS OF POLICE, STATE OF NEW JERSEY, MICHAEL HUGHES, INDIVIDUALLY AND ACTING UNDER COLOR OF LAW, WILLIAM NALLY, INDIVIDUALLY AND ACTING UNDER COLOR OF LAW, JEFFERY LANCASTER, INDIVIDUALLY AND ACTING UNDER COLOR OF LAW, REYNOLD THERIAULT, INDIVIDUALLY AND ACTING UNDER COLOR OF LAW DONNA L. MARKULIC, INDIVIDUALLY AND ACTING UNDER COLOR OF LAW, JOHN AND JANE DOES 1-10, ABC CORPORATIONS, AND XYZ STATE ENTITIES.<br><br>              Defendants. | **FIRST AMENDED COMPLAINT**<br>**JURY TRIAL DEMAND**<br><br><br>**Docket No.: 1:23-cv-04070-JHR-SAK** |

1

Plaintiff, Christopher Leary, by and through his attorney, Phyllis Widman, Esq., of Widman Law Firm, LLC, says by way of amended complaint against Defendants as follows:

Plaintiff, Officer Christopher Leary, hereby complains of Defendants Egg Harbor Township Police Department, the Township of Egg Harbor, The State of New Jersey, Mainland Local PBA #77, New Jersey State Association of Chiefs of Police, Officer William Nally (ret.), Officer Michael Hughes (ret.), Officer Jeffery Lancaster, Officer Reynold Theriault, Ms. Donna L. Markulic, John and Jane Does 1- 10, ABC Corporations, and XYZ State entities as follows:

## **THE PARTIES**

1.      Plaintiff, Christopher Leary (hereinafter referred to as "Officer Leary" or "Plaintiff"), is an individual domiciled in Atlantic County, New Jersey, with an address of 4 Knight Court, Egg Harbor Township, New Jersey 08234. Officer Leary is both an employee of the Egg Harbor Township Police Department, and a member of the Mainland Local PBA #77 policemen's union.

2.      Defendant, Egg Harbor Township Police Department ("EHT PD"), is a public entity with an address of 3515 Bargaintown Road, Egg Harbor Township, New Jersey 08234 and is Plaintiff's current employer.

3.      Defendant, Township of Egg Harbor (hereinafter referred to as the "Township"), is a public entity with an address of 3515 Bargaintown Road, Egg

Harbor Township, New Jersey 08234 and is the Township which oversees the EHT PD.

4.      Defendant, Mainland Local PBA #77 (hereinafter referred to as the "Union"), is a policemen's union, of which Plaintiff is a member, with an address of 6712 Washington Avenue, Suite 104, Egg Harbor Township, New Jersey 08234.

5.      Defendant, New Jersey State Association of Chiefs of Police ("NJSACOP"), is a private organization with an address of 751 Route 73 North, Suite 12, Marlton, NJ 08053 and is the entity responsible for administering and reviewing the promotional exams, as well as providing study material to the officers.  NJSACOP is contracted with EHT PD and/or the Union.

6.      Defendant, State of New Jersey, is the governing State entity through which the EHT PD and the Township operate.

7.      Defendant, Michael Hughes, now retired, is an individual with an address of 500 Dogwood Avenue, Egg Harbor Township, New Jersey 08234, and was the Chief of Police for the EHT PD at all times relevant to this Complaint.

8.      Defendant, William Nally, is an individual with an address of 751 Rte. 73 North, Suite 12, Marlton, New Jersey 08053, and is also a retired Chief of Police who currently serves as the Deputy Executive Director of NJSACOP and who was the individual responsible for administering, reviewing, and/or overseeing the promotional exams at issue herein.

9.     Defendant, Jeffrey Lancaster, is an individual and officer with an address of 123 N. Yarmouth Ave., Longport, New Jersey, 08403, and who is the President of the Mainland Local PBA #77 Union.

10.     Defendant, Reynold Theriault, the Union's Business Agent, is an individual and retired officer with an address of 15 Hay Rd., Tuckerton, New Jersey 08087, and is the individual responsible for representing Plaintiff on behalf of the Union throughout the Grievance process at issue herein.

11.     Defendant, Donna L. Markulic, now retired, is an individual with an address of  18 James Dr., Waretown, New Jersey 08758, and was the Township Administrator during all times relevant to this Complaint.

12.     Fictitious defendants, John and Jane Does 1-10, represent any and all individuals, officers and non-officers employed by, contracted by, or in any other way involved with the EHT PD, the Township, the Union, and/or NJSACOP, who are potentially responsible for the creation, implementation, and/or enforcement of Defendants' employment practices, including the promotional process.

13.     Fictitious defendants, ABC corporations, represent any and all parent, subsidiary, employed, contracted, or otherwise affiliated entities involved in the creation, implementation, and/or enforcement of Defendants' employment practices, including the promotional testing and process.

14.     Fictitious defendants, XYZ state entities, represent any and all additional state entities involved in the creation, implementation, and/or

enforcement of Defendants' employment practices, including the promotional testing and process.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331. Plaintiff further invokes the supplemental jurisdiction of the Court pursuant to 28 U.S.C. §1367 to hear and decide state law claims which are so related to the Federal claims that they form part of the same case and controversy within the meaning of the Federal Constitution.

16. Venue is proper pursuant to 28 U.S.C. §1391(b) because all Defendants reside within the District of New Jersey and a substantial part of the events giving rise to the Complaint occurred in the District of New Jersey.

17. Plaintiff has provided timely notice to the Defendants as required by the New Jersey Tort Claims Act.

## PROCEDURAL HISTORY/TIMELINE

18. Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

19. On October 10, 2022 Plaintiff initiated a "Step One" Grievance by emailing Defendant, Michael Hughes, asking if he could receive copies of his own tests and results.

20.     On October 12, 2022, Plaintiff sent Defendant, Michael Hughes, a follow up letter once again requesting to see his own tests and results after Plaintiff did not receive a response to his initial email.

21.     On October 31, 2022, Plaintiff submitted a written "Step Two" Grievance formally requesting to see the details of his examination tests and scores.

22.     On November 22, 2022, Defendant, Micahel Hughes, responded to the Step Two Grievance on behalf of the EHT PD, denying the Grievance.

23.     On November 22, 2022, Plaintiff submitted a formal "Step Three" Grievance.

24.     On January 30, 2023, Defendant, Donna L. Markulic, authored a response to the Step Three Grievance on behalf of the Township, denying the Grievance.

25.     On or about January 30, 2023, Plaintiff informed the Union that he would like to pursue arbitration for his Grievance, but was denied this request.

26.     On or about April 28, 2023, Plaintiff sent a Tort Claims Notice to the State of New Jersey, the Township, and the EHT PD.

27.     It was confirmed that the State of New Jersey, the Township, and the EHT PD received Plaintiff's Tort Claims Notice.

28.   On July 28, 2023, Petitioner timely filed an Unfair Practice charge in the Public Employment Relations Commission ("PERC"), against EHT PD and the Union.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

29.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

30.   Plaintiff began working for the EHT PD in 2003 and has been a dutiful public servant in the Egg Harbor Township community for twenty (20) years and three (3) months.

31.   In September 2022, Plaintiff was a candidate and participated in the promotional process for a Sergeant position within the EHT PD.

32.   On September 9, 2022, Plaintiff took the written portion of the promotional exam.

33.   On September 21, 2022, Plaintiff took the oral portion of the promotional exam.

34.   After the conclusion of the promotional exams, Plaintiff was provided with only his numeric scores.

35.   Pursuant to the contract between the Union and EHT PD, titled "Agreement between Township of Egg Harbor and New Jersey State Policemen's Benevolent Association, Inc. - Mainland Local #77," (hereinafter "the collective

bargaining agreement") Plaintiff is entitled to see his own tests, grades, and evaluations within the 14 days of the posting.

36.     Specifically, pursuant to page 42 of the Collective Bargaining Agreement, Article XXVI Promotions, paragraph F states, "All Police Officers who take the test will be allowed to see their own tests and the grades received after the official results are announced and posted, within 14 days of the posting."

37.     Pursuant to the collective bargaining agreement, a "Step One" Grievance is making an informal complaint in an attempt to resolve the issue.

38.     Specifically, the Grievance Procedure in the collective bargaining agreement states that in Step One of reporting a Grievance, "an earnest effort shall be made to settle the difference between the aggrieved Police Officer and the Chief of Police or his/her designated representative for the purpose of resolving the matter informally."

39.     Thereby, Plaintiff advised the Union and the EHT PD that he had not been given the opportunity to review his own tests as provided in his contract and that he would like to do so.

40.     On or about October 10, 2022, Plaintiff emailed then Chief of Police, Michael Hughes (now ret.), requesting to see his own tests and scores per the terms of his contract.

41.     Defendant Michael Hughes did not respond to this request.

42.    On October 12, 2022, Plaintiff sent a more formal memorandum to Defendant Michael Hughes, requesting the same information regarding his exams.

43.    Plaintiff's second request was again ignored.

44.    When his earnest effort to engage in the informal process went ignored, Plaintiff filed a formal written complaint, or "Step Two" Grievance, on October 31, 2022.

45.    In denying the Step Two Grievance, Defendant Michael Hughes, claimed that the provision of the collective bargaining agreement regarding access to test scores (recited in Paragraph 36 herein) "does not apply to the NJSCOP, [sic] or any other outside entity utilized to facilitate all or part of a promotional process."

46.    He continued in his response, and stated "a past practice" that "has been clearly defined over the decades" was his reason for refusing Plaintiff's request, thereby violating and breaching Plaintiff's collective bargaining agreement, of which he is a third party beneficiary.

47.    On November 22, 2022, Plaintiff submitted a Step Three Grievance, appealing the denial of his Step Two Grievance.

48.    In or around November 2022, the Sergeant promotions were finalized, despite (upon information and belief) *multiple active, unresolved* grievances; including, but not limited to Plaintiff's, regarding the administration and overall skewed procedure of the promotional process.

49.     Upon information and belief, Defendant, Donna Markulic, was (at least outwardly)  responsible for the hasty finalization of the promotions and for the breach of the collective bargaining agreement.

50.     On January 30, 2023, Defendant Donna Markulic, on behalf of the Township, authored the Township's denial of Officer Leary's Step Three Grievance.

51.     In the Township's denial of the Step Three Grievance, it states that "***it is clear*** that both the contact and the General Order allows [sic] officers the right to review their tests but this allowance clearly contradicts the policy and testing contract of the NJSACOP." (emphasis added)

52.     The Township's denial of Plaintiff's Grievance also states that "the delay of the Chief of Police to address or remedy the grievances within the fourteen (14) day window was clearly due to the fact that he had no recourse or ability to do it."

53.     Despite this clear admission of liability by the Defendants, and this violation of contract law, Plaintiff's civil rights, and other acts or omissions contrary to law, the Union  refused to follow through with arbitration; thereby having wrongfully and intentionally conspired with and abetted the other Defendants in depriving Plaintiff of his statutory and constitutional rights.

54.     Instead of protecting Plaintiff's rights and refraining from violating the law, the Township ultimately concluded that "the remedy of the grievances can

only be accomplished by a change in the contractual language and/or in the promotional policy, which must be accompanied by the Township and the PBA representatives."

55.    This hypothetical solution, if even implemented, provides no relief for Plaintiff's current inability to view his own tests and scores from the September 2022 promotional exams, and therefore, Plaintiff's grievance was left ignored and discarded and Plaintiff is still not able to be promoted.

56.    Upon information and belief, the test was administered unfairly and/or the scores may have been altered; however, due to Unfair Practices by the Union and EHT PD, Plaintiff was intentionally kept in the dark and pushed away from what he is rightfully entitled to per the agreement: his own test.

57.    Plaintiff was deprived of his statutory rights protected under the New Jersey State Constitution, Civil Rights Act, due to Defendants' interfering with Plaintiff's rights, and using intimidation and/or coercion.

58.    An example of this intimidation is the insinuation that Plaintiff needs to simply accept this as the process, unfair or not.  Defendant Hughes stated in the Step Two Grievance that this ongoing problem has existed for decades and that "this is validated by several officers in the past asking to see tests and grades they received and being denied without any grievances being filed because the understanding was, and is, still very clear." Officer Hughes response 11/22/22).

59.     Based on the aforementioned, upon information and belief, officers in the past were subjected to a violation of their rights, but they were afraid to file any grievances.

60.     The promotional process is intentionally kept hidden and in secret between the EHT PD, the testing company, and the Union.  These Defendants have conspired to keep the information away from officers so that they can promote and not promote who they want, and based on reasons other than merit.

61.     For example, upon information and belief, officers with similar examination scores to Plaintiff were promoted, despite their lack of seniority or experience in comparison to Plaintiff. Those officers may have been friends with Defendants and thus, were promoted.  This is arbitrary, unfair and a conspiracy between the parties.

62.     Upon information and belief, these decisions were not made impartially and test scores were intentionally skewed to meet Defendants' desired outcome for who will be promoted.

63.     Upon information and belief, most of these decisions were made by then Police Chief, Defendant, Michael Hughes.

64.     Defendant Jeffery Lancaster, president of the Union, failed to fairly represent Officer Leary throughout the Grievance process, which culminated in his blatant refusal to arbitrate, despite Plaintiff requesting to proceed to arbitration.

The Union and Defendants Reynold Theriault and Jeffrey Lancaster refused to bring the matter to arbitration.

65.     Upon information and belief, Jeffery Lancaster, Reynold Theriault, and Michael Hughes conspired to make sure Plaintiff's Grievance did not proceed to arbitration. Not only does this rise to the level of conspiracy, but  it is in clear violation of the Employer-Employee Relations Act, constituting a breach of the duty of fair representation, as well as a violation of Officer Leary's civil rights under State and Federal law.

66.     Upon information and belief, some or all of the Defendants conspired to attempt to conceal the inconsistencies and contract violations inherent in the current promotional process.

67.     Upon information and belief, Plaintiff had a meritorious grievance that was intentionally not resolved through the Grievance process and should have been brought to arbitration. This violation of Plaintiff's rights and the law, including the conspiracy to breach the collective bargaining agreement,  were intentional and malicious.

68.     Upon information and belief, Defendants have conspired with one another in such a way that makes the promotional examination process for Sergeant unfair, and when Plaintiff attempted to grieve the process, he was not given fair representation.

69.    Plaintiff has suffered economic damages and current and future financial distress as a direct result of Defendants' actions.

70.    Plaintiff has suffered mental and emotional damages as a direct result of Defendants' actions.

71.    Under the law, including the Federal Civil Rights Act, Defendants' actions warrant a request by Plaintiff for punitive damages.

72.    On or about April 28, 2023, Plaintiff sent a Tort Claims Notice regarding these issues to the State of New Jersey, the Township, and the EHT PD.

73.    In response to this, EHT PD retaliated against Plaintiff by putting him on administrative leave until he was able to complete a mental health evaluation, which Defendants knew was not necessary.

74.    Plaintiff asserts that this is evidenced by the fact that EHT PD at no time attempted to collect Plaintiff's weapons or other state-issued equipment prior to their receipt of the psychological evaluation results.  Rather, Defendants illegally asserted their power and control over Plaintiff to harass him by putting him on administrative leave in retaliation for his seeking legal redress and filing the required Notice of Claim under the Tort Claims Act.

75.    Thereafter, Officer Leary received full and complete clearance to return to work from the doctor.

76.    Defendants' illegal and unconstitutional actions have caused Plaintiff substantial damages including loss of future income and pension benefits,

14

humiliation, emotional distress and anxiety. Plaintiff seeks all remedies available to him under the law including, but not limited to, compensatory and punitive damages, back pay, future pay and increases, promotion, and attorney's fees and costs.

## <u>COUNT I  - BREACH OF CONTRACT</u>

77.     Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

78.     Pursuant to the collective bargaining contract between the Union and EHT PD, of which Plaintiff is a third-party beneficiary, officers are entitled to see their testing materials and results within fourteen (14) days after the posting of the initial results.

79.     Officer Leary requested on numerous occasions to see the materials he is entitled to see pursuant to his contract.

**80.     <u>Officer Leary voiced his concerns with a potential breach to two of his colleagues who had similar stories.</u>**

**81.     <u>Defendant Theriault, wrote an email to telling Plaintiff that he understands that the fact Plaintiff did not get to see his test, which Defendant states is a clear violation of the contract.</u>**

82.     Officer Leary was intentionally and outwardly denied the ability to see these materials because EHT PD's contract with NJSACOP forbids the disclosure of such materials.

**83.**      **Defendant Chief Nally was aware of the discrepancy between his and NJSACOP's contract with the EHT PD and the conflicting language with the CBA between the Union and the EHT PD.  Defendant Nally maintained the position that the officers could not see their exams and the Union and EHT PD went along with this, claiming that it is past practices and/or that they will change the testing company in the future.  None of which relieved Plaintiff of the harm these Defendants caused.**

84.      EHT PD, Defendant Michael Hughes, and all other officers and non-officers involved in the negotiation and/or singing of the contract with NJSACOP knew at all times relevant herein that the NJSACOP contract was violative of Officer Leary's rights under the contract with the Union.

85.      EHT PD and Michael Hughes and all others involved in the negotiation of the agreement, knowingly breached the agreement by: (a) entering into this contradictory contract with NJSACOP, and (b) upholding the contract with NJSACOP, despite the resultant breach of contract between the EHT PD and Union contract.

86.      The Union and its agents, including, but not limited to Defendants Reynold Theriault and Jeffrey Lancaster, breached the agreement by failing to take action to enforce Officer Leary's rights under the collective bargaining agreement.

87.      To date, Plaintiff has still not been able to view the materials he is entitled to view pursuant to his contract.

**88.** <u>**Defendant, Theriault, admitted that the language in the agreement (CBA) was a problem and insinuated a breach of contract, when he emailed the Township Administrator, Markulic, and stated that while the language needed to be changed, removal of it is not an option.**</u>

89.    Plaintiff has been passed over for a promotion and, by design, is unable to confirm or deny the accuracy of the test results due to Defendants' breach of contract and refusal to provide the examination materials as requested.

90.    Plaintiff has suffered mental, emotional, and economic damages due to Defendants' actions.

**WHEREFORE**, Plaintiff seeks judgment as follows:

      a. Economic damages for lost wages and benefits (past and future);
      b. Compensatory damages;
      c. Punitive damages;
      d. Attorneys fees and costs; and
      e. Any other relief that the Court may deem just and equitable.

## <u>COUNT II - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING</u>

91.    Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

92.    Plaintiff is a third-party beneficiary of the contract for employment between his union and his employer.

93.    Every contract contains a covenant of good faith and fair dealing.

94.     Defendants failed to act in good faith when knowingly entering into contradictory contracts that would infringe on Plaintiff's rights.

95.     By admission, Michael Hughes, stated this is an issue that has been brought to Defendants' attention previously, yet historically nothing has been done to resolve the inconsistencies and contradictions that continue to cause issues [as paraphrased].

96.     DefendantsDespite having this knowledge from past incidents, the Union and the Township breached the covenant of good faith and fair dealing by not engaging in any real effort to rectify this problem during negotiations of the agreement and by not pursuing an effective resolution to Plaintiff's Grievance.

97.     EHT PD breached the covenant of good faith and fair dealing when it entered into a contract that limited Plaintiff's, and other officers', rights under their collective bargaining agreement and thus, was not consistent with the expectations of Plaintiff.

98.     Plaintiff has suffered mental, emotional, and economic damages due to Defendants' breach.

**WHEREFORE**, Plaintiff seeks judgment as follows:

      a.  Economic damages for lost wages and benefits (past and future);
      b.  Compensatory damages;
      c.  Punitive damages;
      d.  Attorneys fees and costs; and
      e.  Any other relief that the Court may deem just and equitable.

## <u>COUNT III - BREACH OF THE DUTY OF FAIR REPRESENTATION</u>
### <u>(New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c) and (e), and</u>
### <u>Employer-Employee Relations Act  N.J.S.A. 34:13A-5.4 and 5.3)</u>

99.    Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

100.  Pursuant to the New Jersey Employer-Employe Relations Act § 34:13A-5.4 ("EERA"), public employers, their representatives or agents are prohibited from "interfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act."   These rights include fair representation by the employees' union.

101.  Defendant, Union, had a duty to represent Plaintiff in good faith when bringing a Grievance before EHT PD and to fairly and competently represent the Plaintiff throughout the process. Instead, Defendants, the Union, Theriault, Lancaster, Markulic, and the EHT PD, acting under the color of law, arbitrarily and without just cause or excuse, refused to assist Plaintiff in going to arbitration per Plaintiff's request.

102.  The duty of fair representation requires union representatives to represent the member fairly, in good faith, and without discrimination. Defendants', the Union, Theriault, Lancaster, Markulic, and the EHT PD, chose not to arbitrate, which was in bad faith. They should have represented Plaintiff without hostility and acted in complete good faith and honesty, but instead, they breached their duty of fair representation.

103.   The New Jersey constitution guarantees the right of public employees to "organize, present to and make known to the State…their grievances and proposals through representatives of their own choosing." N.J. Const.Art.1, paragraph 19.

104.   The Union's duty of fair representation includes the obligation to process employee grievances in good faith, pursuant to § 34:13A-5.3. The result of the Grievance process provided no relief whatsoever for Plaintiff's complaints and was unacceptable to Plaintiff, who was refused his rights.

105.   The Defendants in this action violated Plaintiff's civil rights under N.J.S.A. 10:6-2(c) by depriving Plaintiff of his substantive due process secured by the laws of this state.   Likewise, Plaintiff's exercise of his rights have been interfered with by coercion by all Defendants herein, while acting under color of law.

106.   Defendants Jeffrey Lancaster and Reynold Theriault (Business Agent) are both agents of the Union and acted under color of law. Officer Lancaster and Officer Theriault refused to pursue Plaintiff's Grievance beyond the initial Grievance process, which they were required to do fairly and in good faith. These Defendants and the other Defendants named within have violated the law (EERA) and violated Plaintiff's civil rights under the above-named Civil Rights Act statute.

107.   Plaintiff has suffered mental, emotional, and financial harm as a direct result of Defendants' breach of Duty of Fair Representation, and violation of Plaintiff's civil rights.

**WHEREFORE**, Plaintiff seeks judgment as follows:

a. Economic damages for lost wages and benefits (past and future);
b. Compensatory damages;
c. Punitive damages;
d. Attorneys fees and costs; and
e. Any other relief that the Court may deem just and equitable.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

108.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

109.   Plaintiff has worked hard in his decades-long career as an officer to receive a promotion and cares deeply about his role as a public servant.

110.   Defendants' actions have intentionally prevented Plaintiff from being able to advance his career, despite the many objective reasons why he is eligible for the promotions.

111.   Defendants actions are intentional and extreme, as other officers have been selected for promotions over Plaintiff for partial reasons and not based on merit.

112.   Defendants' conduct is outrageous, especially due to Plaintiff's pristine employment record and dedication to the force (including returning to work after being shot).

113.   Plaintiff has suffered emotionally as a direct result and proximate cause of Defendant's willful and malicious actions.

114.   Plaintiff has had no recourse, despite making every attempt and effort to resolve this issue.  The situation has become so distressing that no reasonable person would be expected to endure it.

**WHEREFORE**, Plaintiff seeks judgment as follows:

a.  Economic damages for lost wages and benefits (past and future);
b.  Compensatory damages;
c.  Punitive damages;
d.  Attorneys fees and costs; and
e.  Any other relief that the Court may deem just and equitable.

## COUNT V - HOSTILE WORK ENVIRONMENT/RETALIATION

115.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

116.   Due to the adverse employment actions by Defendants and the violation of Plaintiff's civil rights, Plaintiff sent a Tort Claims Notice to the State of New Jersey, the EHT PD, and the Township after all attempts to resolve his complaints proved fruitless.

117.   Plaintiff's sending of the Tort Claims Notice was protected employee activity.

118.   However, after receiving the Tort Claims Notice, EHT PD placed Plaintiff on administrative leave beginning late on a Friday afternoon, the weekend

of Memorial Day, and informed him he could not return to work without a fitness for duty evaluation.

119.   Plaintiff was not allowed to work that weekend as planned and he was unable to schedule an appointment for an evaluation given it was a holiday weekend, the timing of which was orchestrated by Defendants.

120.   Plaintiff alleges that he was placed on administrative leave in retaliation for filing the Tort Claims Notice with the State.

121.   As evidence that the administrative leave was sheer retaliation, despite Defendants' alleged concern for Plaintiff's mental health, no efforts or attempts were made to contact Plaintiff about the possession of his weapons or any other State-issued materials.

122.   Plaintiff remained in possession of all of his state issued weapons and firearms throughout the duration of his administrative leave.

123.   Plaintiff suffered mental, emotional, and financial damages as a direct result of being retaliated against.

**WHEREFORE**, Plaintiff seeks judgment as follows:

a.   Economic damages for lost wages and benefits (past and future);
b.   Compensatory damages;
c.   Punitive damages;
d.   Attorneys fees and costs; and
e.   Any other relief that the Court may deem just and equitable.

## COUNT VI - CONSPIRACY

124.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

125.   Pursuant to Defendant Michael Hughes' denial to Plaintiff's Step Two Grievance, he cites "past practice" that is simply "understood" as reasoning for the violation of Plaintiff's contractual rights.

126.   Upon information and belief, officers have historically been barred from viewing the materials from promotional exams that they are entitled to view per the Union contract.

127.   The inability to view these materials makes it nearly impossible to know what the true scores of the tests were.

**128.   Defendant Nally, and his organization, Defendant NJSACOP, contracted with the EHT PD, to administer the exams with the provision in Defendants' agreement that they will never be obligated to reveal their exams.**

**129.   Defendant Nally and Defendant Hughes were in contact with each other regarding the upcoming test at issue in this case.  The two Defendants conspired to decide which entrance exam Chief Hughes should use from Defendant Nally.**

**130.   Defendant Nally goes so far as to allow Defendant Hughes to choose from three different exams and Defendant Nally explains which exam**

tends to produce lower exam scores and which exam would be designed for maximum diversity.

131.    In the past, other officers had the same problem.

132.    In fact, in 2012 Officer Robert O'Donoghue passed the written exam but failed the oral exam.

133.    Officer Robert O'Donoghue had reason to believe that there was possibly an error in the grading or possibly an error in the reporting.  He requested a meeting with the then Chief, Michael Morris (Chief at the time) after he was notified of his failure to discuss the results and failure.

134.    Chief Michael Morris (Chief at the time) advised the candidates that he would meet with them each individually to have discussions, but to Officer O'Donoghues knowledge, the meetings were never conducted and the scores in question were not addressed.

135.    In 2014 Officer Robert O'Donoghue took another exam and requested to review materials with Chief Michael Morris (Chief at the time). Officer Robert O'Donoghue's requests to review materials were not met. Officer Robert O'Donoghue seeked assistant from the PBA. Ray Theriault was the PBA president at the time & Officer Robert O'Donogue's representative.

136.    It is asserted that Defendants' behavior is a pattern among several officers testing for promotion.

137.   Upon information and belief, the decisions for promotions are not made based on the objective test scores and/or the test scores may be skewed to unfairly affect who is promoted.

138.   Upon information and belief, Jeffery Lancaster, Reynold Theriault, Michael Hughes, NJSACOPS, and/or other Defendants, named or unnamed, conspired to decide who would receive promotions.

139.   Upon information and belief, Jeffery Lancaster, Reynold Theriault, and Michael Hughes conspired to make sure Plaintiff's Grievance did not proceed to arbitration, despite his complaints having merit and having not been resolved through the Grievance process.

140.   **Via email, Plaintiff requested the minutes from an Executive Board meeting that was conducted on February 1, 2023. Unfortunately for Plaintiff, it appears that the meeting may have been secretive and/or there were simply no minutes evidencing the discussions that took place in the meeting. That email shows Plaintiff attempting to proceed to the next step of his grievance, but instead it appears that Plaintiff was denied access to what might have been a meeting.**

141.   **This secretive Board meeting took place on February 1, 2023 and the next day, on February 2, 2023, Ray Theriault filed an OPRA request upon the urgence of Plaintiff.**

142. **When the results of the OPRA request arrived, Defendant Theriault, told Plaintiff that there were too many documents and that he, Theriault, would go through everything before turning it over to Plaintiff.**

143. **This gave Theriault an opportunity to discern what may have or have not been for his benefit, or that of the union and/or police department, or any of the other Defendants.**

144. **Further, intentionally, Mr. Theriault requested the documents through OPRA for the dates randing from January 1, 2022-December 1, 2022; however, the most relevant dates to this matter and the matter at the time were through February 28, 2023.**

145. Upon information and belief, the decision not to arbitrate was not made impartially or based on the merits of the Grievance.  Rather, this decision was made, in furtherance of the conspiracy between Defendants Jeffrey Lancaster and Reynold Theriault and the then Chief of Police, Michael Hughes and the testing company NJSACOPS for self-serving reasons.

146. Likewise, the decision by the Defendants to refuse to show Plaintiff his test is a conspiracy since it is an agreement between the parties in furtherance of committing an unlawful act: namely skewing the promotional test exam and results.

147. Plaintiff suffered damages as a result of Defendants' conspiracy.

**WHEREFORE**, Plaintiff seeks judgment as follows:

a. Economic damages for lost wages and benefits (past and future);
b. Compensatory damages;
c. Punitive damages;
d. Attorneys fees and costs; and
e. Any other relief that the Court may deem just and equitable.

## COUNT VII - BREACH OF THE COLLECTIVE BARGAINING

## AGREEMENT

148.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

149.   The Union failed to file a grievance when it learned of the collective bargaining breach of having two conflicting contracts related to revealing the results of the promotional exams.

150.   The Union and EHT PD breached the collective bargaining agreement when it entered into the agreement since the Defendants knew that the Plaintiff and other Officers would be unable to see their test results.

151.   This breach was intentional and had been known for many years.

**152.   Allegations of the same issues have been made as far back as 2014 by officers similarly situated as Officer Leary.**

153.   Defendants' failure to amend and correct this breach supports Plaintiff's claim that this violation of the law is intentional.

**WHEREFORE**, Plaintiff seeks judgment as follows:

a.   Economic damages for lost wages and benefits (past and future);
b.   Compensatory damages;
c.   Punitive damages;

     d.     Attorneys fees and costs; and

     e.     Any other relief that the Court may deem just and equitable.

## COUNT VIII - STATE CIVIL RIGHTS VIOLATION UNDER THE NEW JERSEY CIVIL RIGHTS ACT, PURSUANT TO N.J.S.A. 10:6-2 FAILURE TO PROMOTE

154.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

155.   Defendants deprived, interfered and/or attempted to interfere with Plaintiff's attempts to advance himself and become promoted.

156.   Defendants were acting under color of law, in their capacity as law enforcement officers and their related roles, when they violated N.J.S.A. 40A:14-129, which specifically states that due consideration shall be given to the member or officer so proposed for the promotion, to the length and merit of his service and preference shall be given according to seniority in service.

157.   Further, Defendants were acting under color of law, in their capacity as officers and their related roles when they failed to promote Plaintiff in violation of public policy, specifically due to Defendants' breach of their duty to fairly represent Plaintiff in his grievance process and by way of Defendants' breach of contract.

158.   Defendants' violations of Plaintiff's civil rights caused Plaintiff harm.

**WHEREFORE**, Plaintiff seeks judgment as follows:

     a.     Economic damages for lost wages and benefits (past and future);

b.    Compensatory damages;

c.    Punitive damages;

d.    Attorneys fees and costs; and

e.    Any other relief that the Court may deem just and equitable.

## COUNT IX - STATE CIVIL RIGHTS VIOLATION UNDER THE NEW JERSEY CIVIL RIGHTS ACT PURSUANT TO N.J.S.A 10:6-2 BREACH OF DUTY OF FAIR REPRESENTATION

159.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

160.   Defendants deprived, interfered and/or attempted to interfere with Plaintiff's rights to be fairly represented by his union.

161.   Defendants, Michael Hughes, Jeffrey Lancaster, Reynold Theriault, and or other Defendants, under color of law, deprived, interfered (and/or attempted to interfere), by way of intimidation and coercion, with Plaintiff's rights to be fairly represented by his Union and/or conspired to not arbitrate Plaintiff's grievance.

162.   This violation is contrary to the New Jersey Constitution, which guarantees the right of public employees to "organize, present to and make known to the State…their grievances and proposals through representatives of their own choosing." N.J. Const.Art.1, paragraph 19.

163.   Defendants' actions directly caused Plaintiff's harm.

**WHEREFORE**, Plaintiff seeks judgment as follows:

a.    Economic damages for lost wages and benefits (past and future);

     b.     Compensatory damages;

     c.     Punitive damages;

     d.     Attorneys fees and costs; and

     e.     Any other relief that the Court may deem just and equitable.

## COUNT X -VIOLATION OF FEDERAL CIVIL RIGHTS, PURSUANT TO 42 U.S.C. §1983

164.   Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs as if fully set forth herein.

165.   Defendant, EHT PD, is a "state actor," acting under color of law,  for purposes of this  §1983 claim.

166.   Defendant, Union, is a "state actor," acting under color of law, for purposes of this  §1983 claim.

167.   All other Defendants, including those named individually herein, are "state actors," acting under color of law for purposes of this  §1983 claim.

168.   These Defendants acted within their official and individual capacities in conspiring to breach the collective bargaining agreement and intentionally breaching their duty of fair representation to Plaintiff.

169.   Together, the aforementioned acts by Defendants in this matter wrongfully deprived Plaintiff of his interests without due process of law.

170.   Due process requires that the procedures by which the applicable laws were applied to Plaintiff, must be evenhanded.   Plaintiff alleges that he was subjected to the arbitrary exercise of government power by the Union, EHT PD, and all other Defendants, together and individually.

31

171.   As a direct result of the violations set forth in all counts of the within complaint, Plaintiff has sustained economic and compensatory damages, loss of future income and pension, loss of future benefits, emotional distress, anxiety and humiliation.

**WHEREFORE**, Plaintiff seeks judgment as follows:


    a.    Economic damages for lost wages and benefits (past and future);

    b.    Compensatory damages;

    c.    Punitive damages;

    d.    Attorneys fees and costs; and

    e.    Any other relief that the Court may deem just and equitable.


## XI - REQUEST FOR DECLARATORY JUDGMENT REGARDING BREACH OF CONTRACT
## FED. R. CIV. P. 57 AND 28 U.S.C. § 2201

**172.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.**

**173.   Any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a).**

**174.   An actual, present, and justiciable controversy has arisen between the Plaintiff and Defendants concerning the Collective Bargaining Agreement between the Defendant Police Department and the Police Union Defendants**

(the PBA, Lancaster and Theriault). This controversy is ripe for a legal determination, thereby making it justiciable and in conformance with the statute.

175.   Likewise, the aforementioned breach of contract extends to the involvement by the testing company, NJSACOP and its related co-defendants, since all parties are intertwined with each party in the ultimate breach of contract pertaining to and causing damages to Plaintiff.

176.   The Police Department Defendants breached the contract with the Union because the Police department had a separate, conflicting contract with the private testing company. Defendants Theriault and Markulic admit this in emails to each other.

177.   The police Department and Union contract (collective bargaining agreement, the "CBA") allowed for the employees to see their promotional tests after taking the exams.

178.   The CBA specifically states on page 42 that the employees "will be allowed to see their own tests and the grades received after the official results are announced and posted, within fourteen (14) days if that positing."

179.   The Egg Harbor Township police department is fully aware that their agreement with NJSACOP testing company states that the testing company will not allow anyone to see the test.

**180.   The Union, PBA Mainland Local #77 is fully aware of this discrepancy and has been for "decades."**

**181.   There were clear admissions by Defendant Markulic (Township Administrator), and Ray Theriault, the PBA's Business Agent, by and through the union's president, Jeffrey Lancaster,  that the CBA has caused a clear and obvious violation and breach of contract.**

**182.   Defendants, the PBA, Lancaster and Theriault, as well as Defendant Donna Markulic, corresponded with each other and discussed the inevitable breach of contract they were a part of. These emails contain admissions by these Defendants, which Plaintiff asserts are admissions-by-party-opponent of liability to Plaintiff's Breach of Contract, Conspiracy, and Breach of Duty of Fair Representation claims, among others.**

**183.   For example, Defendant, Ray Theriault, writes in his email "We understand that the fact you didn't get to see your test which is a clear violation of the contract and will be rectified…Given the legal advice we received from our attorney, it is the opinion of the association that if you wish to proceed to arbitration, we will do so." However, Mr. Theriault refused to go to arbitration on behalf of Plaintiff.  Mr. Theriault continued on to say that unless Plaintiff has proof of some type of wrongdoing, "mere allegations of favoritism will not be persuasive in an arbitration."  The Union's refusal to go**

to arbitration is central in Plaintiff's Complaint. This is evidence of the breach of contract.

184.   Likewise, Defendant, Donna Markulic, Township Administrator, stated on page 5 of her denial of Plaintiff's grievance, that "As a Township representative, I would like to see a process that would identify the best candidate to receive promotion and establish a promotional process that will not result in grievances, lawsuits or allegations of favoritism or discrimination." As Ms. Markulic states in her decision, she feels the remedy of the grievances can only be accomplished by a change in the contractual language."

185.   Moreover, Defendant, Theriault wrote to Defendant, Markulic, stating, "the PBA wishes to settle and dismiss the pending grievances regarding the promotional process whereby members were unable to see their tests after they were scored….We do not wish to address any issues with the current list or those already promoted."  Again, Defendants admit the Breach of Contract and offer absolutely no remedy to Plaintiff because doing so, Defendants fear, would result in lawsuits against them by other promoted officers.  Thus, again, Defendants breach the contract and offer no remedy for Plaintiff.

**186.   In  the  within  complaint,  Plaintiff  alleged  Breach  of  Contract, Breach  of  Duty  of  Good  Faith  and  Fair  Dealing,  Breach  of  Duty  of  Fair Representation by the PBA, Violations of Plaintiff constitutional rights under state  and  Federal  law,  and  the  resultant  causes  of  action,  such  as  Intentional Infliction of Emotional Distress and Hostile Work Environment.**

**187.   In  light  of  Defendants'  own  admissions  of  Breach  of  Contract, Plaintiff contends that he has a prevailing case under the law and based on the admitted facts, thus, pursuant to the Federal Rules of Civil Procedure Rule 57 and  28  U.S.C.  §  2201,  the  Plaintiff  seeks  a  declaratory  judgment  from  this Court to decide:**

    a.  **Whether  the  Defendant  Police  Department  breached its  contract  with  the  Union  by  entering  into  a conflicting  agreement  with  the  private  testing company, as evidenced by emails between Defendants Theriault and Markulic.**
    b.  **Whether Defendant Ray Theriault's acknowledgment of  a  contract  violation  and  subsequent  refusal  to proceed  to  arbitration  constitutes  a  breach  of  the Duty of Fair Representation to the Plaintiff.**

**188.   A declaratory judgment regarding the within Breach of Contract counts  would  assist  in  judicial  economy  and  not  continue  to  waste  public insurance funds (such as the PUBLIC ENTITY JOINT INSURANCE FUND) which  is  currently  paying  attorneys  in  this  case  to  fight  breach  of  contract claims for which there are several admissions of liability.**

**189.   Further, Plaintiff respectfully requests a declaratory judgment in this matter in the interest of justice.  It is not in the interest of justice for Plaintiff to have to prosecute a claim that is so obviously prejudicial. Defendants unnecessarily defend an obvious case wherein the claims have been admitted to, thereby driving up the cost of litigation for the Plaintiff. The person who is the aggrieved party so much so that he sought out and retained counsel and filed a Federal complaint.**

**190.   It is unfair and not in the interest of justice to ignore the glaring facts presented not only by the Plaintiff, but by the Defendants.**

**191.  Given the potential for intentional delays and unnecessary litigation that may obstruct the Plaintiff's pursuit of justice, waste public resources and waste judicial resources, Plaintiff urgently requests the Court issue a declaratory judgment.**

**WHEREFORE, the Plaintiff respectfully requests that this Court enter a declaratory judgment in his favor, as outlined above, along with any other relief the Court deems just and proper.**

**WIDMAN LAW FIRM, LLC**
*Attorneys for Plaintiff, Christopher Leary*
2000 Shore Rd., Suite 201
Linwood, NJ 08221

Dated: October 23, 2023

/s/ Phyllis Widman
Phyllis Widman, Esq.

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I certify that the matter in controversy is the subject of only one other action, which is pending the administrative proceeding under the Public Employment Relations Committee (PERC); Unfair Practice Charge filed on July 28, 2023.

## <u>DEMAND FOR DISCOVERY OF INSURANCE COVERAGE</u>

Pursuant to R. 4:10-2(b), demand is made upon each defendant that it disclose to Plaintiff's counsel whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse such defendant for payments to satisfy any judgment rendered herein and provide Plaintiff's counsel with those insurance agreements or policies, including, but not limited to, all and any declaration sheets. This demand shall include not only primary coverage, but also all and any excess, catastrophe and umbrella policies.

## DESIGNATION OF TRIAL COUNSEL

Phyllis Widman, Esq. is hereby designated as trial counsel for Plaintiff in this matter.

## JURY DEMAND

Plaintiff demands trial by jury for each issue raised herein.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Plaintiff hereby certifies that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding, with the exception of the administrative proceeding before the Public Employment Relations Commission (PERC). To the best of Plaintiff's knowledge and belief, no other parties need to be joined at this time.

## CERTIFICATION PURSUANT TO RULE 1:37-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**WIDMAN LAW FIRM, LLC**
*Attorneys for Plaintiff, Christopher Leary*
2000 Shore Rd., Suite 201
Linwood, NJ 08221

Dated: <u>October 23, 2023</u>                    <u>/s/ Phyllis Widman</u>
                                                Phyllis Widman, Esq.